## COLUMBUS RAILROAD COMPANY *v.* SIZEMORE.

1. The special plea of justification filed in defense to the action having been stricken, it was proper for the trial judge, in his charge to the jury, to restrict them to a consideration of the remaining issues made by the plead-

ings. No exception having been taken to the striking of this plea, the merits of the defense therein set up can not properly be passed upon by this court.

2. Viewed in the light of the pleadings as they stood after the striking of the defendant's special plea, no error of law was committed in any of the rulings complained of; the evidence warranted the verdict, and no reason appears why the judgment of the court overruling the motion for a new trial should be set aside.

Argued October 20,— Decided November 19, 1898.

Action for damages. Before Judge Butt. Muscogee superior court. May term, 1898.

This suit was on account of an expulsion of the plaintiff from a waiting-room provided by the railroad company for the accommodation of persons waiting to take passage upon its cars. There was a verdict for the plaintiff for $250. A motion for new trial was overruled, and the company excepted. According to the plaintiff's evidence, she was in the ladies' waiting room of the defendant's transfer station, waiting to take a car to her home, and was talking to a gentleman, when Flournoy the president of the railroad company, walked in, violently shook a paper in her face, and said, that place was not prepared for her, and to get out. The gentleman with whom she had been conversing told her to remain, and that he would walk out and not cause her any trouble. She did not go at that time, and in a few moments Flournoy walked back and shook a paper in her face, and told her if she did not get out of there he would put her out. He then walked out of the door, and as soon as he did so she went out and walked home, a distance of about two miles from the station. She feared bodily harm, from the way Flournoy spoke to her. She left because he asked her out and told her if she did not get out he would put her out. She had been in the station about fifteen minutes. No people were in the station at the time. There were people outside, and they saw her walk out and leave there; she was so frightened she did not see how many. She did not try to get on the cars. She left the station voluntarily.—According to the defendant's evidence, the plaintiff bore the reputation of a prostitute; and this was stated to Flournoy on the occasion referred to, before he went to her. Flournoy testified that his attention was di-

rected to her by the remarks of a passenger who was talking to a motorman of the company about the character of the woman. Witness then walked by the station and saw her talking with a man. Their heads were close together and they were in very earnest conversation. Witness did not know what they were saying. He asked a policeman who she was, and the policeman gave him her name. Witness went to her and told her that this place was not built for people of her character, and that she could not come there and make her engagements, and she must keep away from there. He turned immediately and walked out of the door and took a car for home. He left the woman and the man sitting there. He used no force or violence, and made no threats, nor any effort to evict her. He does not recollect shaking a paper at her or returning to her. He may have told her to get out of there, but does not think he did. No tickets were sold or baggage checked at the transfer station. The room was a private one for ladies only, and was so marked and designated, and no men were allowed to go in there. There were two waiting-rooms at the station, the other being for the general public. Any persons could have gone in and sat down in the waiting-room for the general public, if they behaved themselves in a decent manner. There were no signs on the waiting-room for the general public.—There was evidence that on the occasion referred to there was nothing improper in the plaintiff's manner. She had been in the waiting-room many times before by herself, and an employee of the company had once before seen her there talking to a man.

The motion for new trial alleged, in addition to the general grounds, that the court erred in charging the jury: "It is insisted . . by the plaintiff that she was evicted. An eviction may be had in two ways, either by intimidation or by physical force, either one of which would be sufficient. If there was a request, as is insisted upon, by the president of this road, that she leave there, and that if she did not leave there he would put her out, and she acted upon the request, believing that physical force would be used, then I state to you, if she went out with that understanding, there would be a legal eviction in contemplation of law. How this is it is for you to say under

the testimony in the case. You may look to the fact as to whether or not she remained there after Mr. Flournoy requested her to leave and after he had left, and you may look to the fact as to whether she left immediately, as she insists that she did. If she did, apprehending physical force, although there was a request simply, accompanied by a threat if she did not leave he would put her out, that would be an eviction in contemplation of law." Also: "The fact that a woman is a lewd woman does not deny her the privilege or the right to ride upon a railroad. She may be a common prostitute, but she, like any other public person,—or any one of the public, I should have said, —has a right to ride upon these common highways, which are common carriers, just so long as their conduct is such as would be becoming ladies and gentlemen on that occasion. Now, was her conduct unbecoming? Did she do anything or say anything at that time that was unbecoming a lady? If so, he had a right to evict her. But if she was simply sitting there in conversation with a man, nothing more appearing than that, he did not have a right to do it. How these things are it is for you to say under the testimony in the case."

As to the other grounds of the motion see the opinion.

*Louis F. Garrard, Frank Garrard* and *Brannon, Hatcher & Martin,* for plaintiff in error.

*L. J. Thornton, A. E. Thornton* and *Miller & Miller,* contra.

Simmons, C. J. The plaintiff brought an action for damages against the defendant railroad company, on account of an alleged wrongful ejection from a waiting-room provided by the company for the accommodation of persons intending to take passage upon its cars. In its answer the defendant denied all the material allegations of the plaintiff's petition. By special plea of justification the defendant sought to make the further defense that the plaintiff was a woman of loose character, and that accordingly it was not only the right but the duty of its officials to eject her from its waiting-room, which it had provided for the convenience and use of its lady passengers, and which was not intended to be kept for and occupied by persons who were dissolute or of doubtful character. At the instance

of the plaintiff the court struck this plea, and the case proceeded to trial upon the sole remaining issue made by the pleadings, viz:, whether or not the plaintiff was in fact ejected as alleged in her petition.   Upon this issue the jury found in her favor; and the defendant's motion for a new trial having been overruled, the case is brought here for review.

1. Complaint is made that the court charged, in effect, that notwithstanding the plaintiff may have been a lewd woman, still if her conduct on the occasion in question was not such as was unbecoming a lady, her ejection from the defendant's waiting-room was wrongful.   It appears that the court allowed the defendant to introduce evidence tending to show that the plaintiff was a common prostitute, whose general character was bad; but this evidence was admitted only for the purpose of affecting her credibility as a witness in her own behalf.   Doubtless, therefore, the court intended, by the charge above referred to, not only to limit the purposes for which the jury were authorized to consider the evidence relating to her character, but to instruct them that, under the pleadings as they then stood, the mere fact that the plaintiff was a woman of ill repute and of immoral habits would constitute no defense to the action.   It is to be observed in this connection that the defendant's special plea of justification had been stricken; and this being so, it was eminently proper for the trial judge to confine the jury to a consideration of the issues presented by the pleadings as they then stood.   This is true whether the striking of the plea was or was not erroneous.   No exception to this ruling was taken, and the action of the judge in refusing to allow the defendant to make the special defense sought to be urged is not properly before this court for review.   We therefore wish to be distinctly understood as not intimating that this defense was not in law a good one.   Had the striking of the special plea been excepted to, the question respecting it would be a very different one, and would present the case in another light.   What is said above disposes of several exceptions which allege error in the refusal of the court to give in charge to the jury certain written requests, by which the defendant endeavored to get before the jury the defense set up in its special plea which had been stricken.

2. Other requests to charge presented by the defendant, but which the court refused to give, assumed as true the version of what occurred as detailed by the company's president, Mr. Flournoy, who was introduced in its behalf as a witness. Clearly, therefore, they were properly rejected as not adjusted to the testimony, which was decidedly conflicting. The least objectionable of these requests was as follows: "I charge you that an eviction may be made by force or by intimidation. Plaintiff insists that she was evicted by being ordered out of the transfer-house by intimidation. Now I charge you that if you believe from the evidence that after the conversation of Flournoy he left the car for his home, and that plaintiff remained at the time in the transfer-house and knew that Flournoy had gone when she left, then this was not such intimidation at the time of her leaving as would constitute an eviction in law, and you should find for the defendant." In the first place, this request is objectionable because unauthorized by the evidence. While it was shown that the company's president did in fact leave for his home after the conversation referred to, leaving the plaintiff in the waiting-room, it did not affirmatively appear that she knew of his departure, or, if so, of his intention to leave for his home, with or without the expectation of presently returning. On the contrary, the plaintiff testified that he had threatened to eject her if she did not leave voluntarily; that she feared personal violence, and immediately departed, leaving him still at the station. While she may have been mistaken as to his presence when she left, it certainly could not be arbitrarily assumed that she knew he had previously gone, destined for his home (wherever that may have been), and had no intention to presently return and carry out the threat which she understood him to have made. Moreover the charge requested is subject to the criticism that it undertakes to declare, as matter of law, that if the plaintiff knew of Flournoy's departure for his home before she left, the jury were bound to assume that she left voluntarily and of her own volition, uninfluenced by any fear of being forcibly ejected if she remained. Besides, "intimidation at the time of her leaving" was not, under the facts presented by the evidence, the proper

test to be applied; for, if intimidated at all by what Flournoy said to her, this occurred some little time previously to her actual departure, and if in leaving she was really influenced thereby, it was not essential that the intimidation employed should be coincident with her departure.

A portion of the charge as given, relating to the law concerning ejection by force, as distinguished from ejection by intimidation, is excepted to. No special assignment of error is, however, stated or relied on. The extract, complaint of which is thus made, is certainly unobjectionable as an abstract statement of well-known legal principles; which is a sufficient reply to the assignment of error made thereon. Indeed, not only is this true, but the charge excepted to appears to have been peculiarly well adapted to the pleadings, in so far as the same were sustained by evidence.

The jury evidently accepted the plaintiff's version of what occurred at the station between herself and the company's president; and we can not say that, taking as true the evidence introduced in her behalf, the finding in her favor was unwarranted. It follows that, no error of law having been committed to which exception is taken, the judgment overruling the defendant's motion for a new trial should not be set aside.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*